In The

# United States Court of Appeals

### For The Federal Circuit

## RON KRAMER, SAL ABRAHAM, THERMOLIFE INTERNATIONAL LLC,

*Plaintiffs – Appellees*,

v.

## CREATIVE COMPOUNDS, LLC,

*Plaintiff – Appellant.*

## CREATIVE COMPOUNDS, LLC,

*Plaintiff – Appellant*,

v.

## RON KRAMER, SAL ABRAHAM,

*Defendants – Appellees.*

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
IN CASE NOS. 2:11-CV-01965-JAT AND 2:11-CV-02033-JAT,
JUDGE JAMES A. TEILBORG.**

————————

### BRIEF OF PLAINTIFFS/COUNTER-DEFENDANTS/APPELLEES

————————

Geoffrey S. Kercsmar
Gregory B. Collins
KRECSMAR & FELTUS, PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001
gbc@kflawaz.com

*Counsel for Plaintiffs/Counter-Defendants/Appellees*

**Form 9**

FORM 9.   Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Kramer _____ v. Creative Compounds, LLC _____

No. 14-1284

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Geoffrey S. Kercsmar _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Ronald Kramer
Sal Abraham
ThermoLife International, LLC

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.   ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Gregory B. Collins (Kercsmar & Feltus, PLLC) admitted 3/6/14
Eric B. Hull (Kercsmar & Feltus, PLLC) will not appear in this action

3/20/14 _____          /s/ Geoffrey S. Kercsmar _____
        Date                               Signature of counsel

                                 Geoffrey S. Kercsmar _____
                                     Printed name of counsel

Please Note: All questions must be answered
cc: _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of March, 2014, I filed the foregoing and Certificate of Interest with the Clerk's Office of the United States Court of Appeals for the Federal Circuit using the CM/ECF System, and further certify that I served, via regular U.S. mail a copy of said filing to the following:

Thomas DeGroot
LAW OFFICES OF THOMAS DEGROOT LLC
1926  Chouteau Ave.
St. Louis, Missouri 63103
tom@degrootlaw.net
*Attorney for Defendant Creative Compounds LLC*

Maria Crimi Speth
Adam S. Kunz
JABURG & WILK PC
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
ask@jaburgwilk.com
*Attorneys for Creative Compounds LLC*

*s/Geoffrey S. Kercsmar*

# CORPORATE DISCLOSURE STATEMENT

Appellee ThermoLife International, LLC certifies that is not owned by a parent corporation and no publically held corporation owns ten percent or more of its stock.

Dated this 22nd day of May, 2014.

KERCSMAR & FELTUS PLLC

/s/ Gregory B. Collins
Geoffrey S. Kercsmar
Gregory B. Collins
KERCSMAR & FELTUS PLLC
7150 E. Camelback Road, Suite 285
Scottsdale, Arizona 85251
Attorneys for Plaintiff/Appellees

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF RELATED CASES .................................................. vii

STATEMENT OF JURISDICTION....................................................................1

INTRODUCTION ................................................................................2

STATEMENT OF THE ISSUES....................................................................4

STATUTORY PROVISION ....................................................................4

STATEMENT OF FACTS ....................................................................6

     I.     CREATIVE CHALLENGES THE '533 PATENT ..............................6

     II.    DURING DISCOVERY, CREATIVE PRODUCES NO EVIDENCE SUPPORTING ITS INVALIDITY CLAIMS.................7

     III.   CREATIVE'S SHIFTING BASES FOR INVALIDITY ....................9

     IV.   DISPOSITION BELOW ....................................................................10

          A.     The District Court Ruled Against Each Basis for Invalidity that Creative Raised Below .......................................11

          B.     The District Court's Ruling on Appellees' Infringement Claims .............................................................................12

SUMMARY OF ARGUMENT ..............................................................14

ARGUMENT ........................................................................................16

    I.    THE STANDARD OF REVIEW........................................................16

    II.   CREATIVE'S INVALIDITY CLAIMS RELY ON UNDOCUMENTED AND UNCORROBORATED EVIDENCE ........................................................................17

    III.  MERE POSSESSION OF DIAC IS INSUFFICIENT TO INVALIDATE THE '533 PATENT ....................................................22

        A.    Creative Has No Evidence of Reduction to Practice ...............23

        B.    A "Dietary Supplement" Must "Supplement" a "Diet"............26

        C.    Inherent Anticipation Does Not Provide a Basis for Creative's "Possession Test" ....................................................29

    IV.  CREATIVE CANNOT RELY ON "PUBLIC KNOWLEDGE"........31

        A.    Creative Waived its Public Knowledge Argument...................31

        B.    Even if Not Waived, the Public Knowledge Argument is Insufficient ........................................................................33

    V.   CREATIVE DOES NOT ADDRESS THE STANDARD REQUIRED TO PROVE PRIOR SALE UNDER § 102(b)..............36

VI.   CONCLUSION.............................................................................37

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242, 106 S. Ct. 2505 (1986) ...........................................................16

*Burroughs Wellcome Co. v. Barr Lab., Inc.*,
 40 F.3d 1223 (Fed. Cir. 1994) .......................................................................24

*Carella v. Starlight Archery & Pro Line Co.*,
 804 F.2d 135 (Fed. Cir. 1986), *amended on reh'g sub nom.*,
 1986 WL 1154370 (Fed. Cir. Dec. 16, 1986)................................................35

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986).......................................................................................16

*Creative Compounds, LLC v. Starmark Labs.*,
 651 F.3d 1303 (Fed. Cir. 2011) .....................................................3, 16, 17, 20

*Dey, L.P. v. Sunovion Pharm., Inc.*,
 715 F.3d 1351 (Fed. Cir. 2013) ...............................................................34, 35

*Eli Lilly & Co. v. Barr Labs., Inc.*,
 251 F.3d 955 (Fed. Cir. 2001) .......................................................................16

*Estee Lauder Inc. v. L'Oreal, S.A.*,
 129 F.3d 588 (Fed. Cir. 1997) .......................................................................24

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
 149 F.3d 1309 (Fed. Cir. 1998) .....................................................................16

*Finnigan Corp. v. Int'l Trade Comm'n*,
 180 F.3d 1354 (Fed. Cir. 1999) ...............................................................*passim*

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
 527 F.3d 1318 (Fed. Cir. 2008) .....................................................................32

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*,
  488 F.3d 982 (Fed. Cir. 2007) ........................................................24

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
  292 F.3d 728 (Fed. Cir. 2002) .......................................14, 17, 19

*Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*,
  322 F.3d 1335 (Fed. Cir. 2003) ....................................................21

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.*,
  303 F.3d 1294 (Fed. Cir. 2002) ....................................................31

*Oney v. Ratliff*,
  182 F.3d 893 (Fed. Cir. 1999) ......................................................20

*Pac-Tec, Inc. v. Amerace Corp.*,
  903 F.2d 796 (Fed. Cir. 1990) ......................................................32

*Pfaff v. Wells Electronics, Inc.*,
  525 U.S. 55 (1998) .........................................................................36

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ....................................................29

*Price v. Symsek*,
  988 F.2d 1187 (Fed. Cir. 1993) ..............................................20, 21

*The Barbed-Wire Patent*,
  143 U.S. 275 (1892) .......................................................................19

*Woodland Trust v. Flowertree Nursery*,
  148 F.3d 1368 (Fed. Cir. 1998) ....................................................19

## STATUTES

15 U.S.C. § 1125(a)(1)(B) ........................................................................7

28 U.S.C. § 1295(a)(1) ..............................................................................1

35 U.S.C. § 102 ....................................................................................5, 31

35 U.S.C. § 102(a) ............................................................*passim*

35 U.S.C. § 102(a)(1)..........................................................12

35 U.S.C. § 102(b) ............................................................*passim*

35 U.S.C. § 102(g) ............................................................9, 32

35 U.S.C. § 271(a) ............................................................12

35 U.S.C. § 282..................................................................17

**RULE**

Fed. R. Civ. P. 56(c)..........................................................16

**OTHER AUTHORITIES**

2 Moy's Walker on Patents § 8:167 (West 4th ed.) ......................................35, 36

3 Pat. L. Fundamentals § 10:9 (2d ed.) ............................................ 23-24

Miriam-Webster's Dictionary (online version)..................................................26

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned certifies that there are no known related cases or appeals.

Dated this 22nd day of May, 2014.

KERCSMAR & FELTUS PLLC

/s/ Gregory B. Collins
Geoffrey S. Kercsmar
Gregory B. Collins
KERCSMAR & FELTUS PLLC
7150 E. Camelback Road, Suite 285
Scottsdale, Arizona 85251
Attorneys for Plaintiff/Appellees

## STATEMENT OF JURISDICTION

Appellees agree with Creative Compounds LLC ("Creative") that this Court has jurisdiction. Specifically, the Court has jurisdiction  pursuant to 28 U.S.C.A. § 1295(a)(1) providing jurisdiction "of an appeal from a final decision of a district court of the United States . . . in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents . . . ."

Creative appeals the District of Arizona's grant of summary judgment in favor of Appellees on Creative's declaratory judgment claim for the invalidity of U.S. Patent No. 7,919,533 B2 ("the '533 Patent").

# INTRODUCTION

This court has repeatedly addressed the high standard to invalidate an existing patent. In order to meet the clear and convincing standard, oral testimony is rarely sufficient. The Court looks for corroboration by documentary evidence. Where a party claims invalidation based on prior use or sale, this Court has required reduction to practice of the patented invention. Each of these principles makes sense. Patent protection would be meaningless if an infringer could simply swear that it once possessed the invention and invalidate properly issued patents. The entire patent system would break down if competitors could invalidate patents even where the underlying work was undocumented and did not generate any results.

Yet that is exactly what Creative asks this Court to do. Creative sought to sell Appellee's patented invention and the very next day filed a declaratory judgment action to invalidate the patent. Creative does not even have one document supporting prior use, prior knowledge, or even its invented "possession" test. It did not produce any journals or records of the alleged tests. Creative does not have any emails regarding any findings regarding those tests. No emails to customers. No formulation of a potential product. No studies of diiodothyroacetic acid's ("DIAC's") effects. No contact with a patent attorney. Nothing.

Instead, Creative relies solely on the oral testimony of its outside consultant Derek Cornelius and his employees. And even that testimony is spotty. Cornelius described his own testing as "subjective," producing "anecdotal" results. Cornelius could not even remember the results of the tests other than "think[ing] people lost a small amount of weight and felt pretty good on it." Essentially, Creative's argument is that Cornelius claims he possessed DIAC ten years ago, ate it, and felt pretty good. On this limited evidence, Creative asks this Court to invalidate a properly issued patent. Notably, this is the almost identical strategy that Creative employed in the case *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303 (Fed. Cir. 2011). Creative even relied on the oral testimony of the same outside consultant. The Court should reach the same conclusion it did in *Starmark*—affirmation of a judgment against Creative.

## STATEMENT OF THE ISSUES

1.    Whether the District Court correctly ruled that Creative's oral testimonial evidence, without any documentation of the use of the invention, public knowledge, or other corroboration of the oral testimony, fell short of the clear and convincing standard to invalidate the '533 Patent.

2.    Whether mere possession of the primary ingredient in a dietary supplement can invalidate a patent, even without reduction to practice or any evidence that the invention worked for its intended purpose.

3.    Whether Creative waived its invalidity claims based on "public knowledge" or the inherent qualities established in prior act by failing to raise those arguments in the District Court.

## STATUTORY PROVISION

At the time this litigation commenced, the pertinent statutory provision, 35 U.S.C. § 102(a) and (b), provided: "A person shall be entitled to a patent unless- (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ."

The District Court referenced the current version of 35 U.S.C. § 102(a), explaining: "Although Creative has cited to 35 U.S.C. § 102(a) and (b), 35 U.S.C. § 102 has recently been amended. The two defenses to patent validity Creative alleges, however, have been included in the new version of 35 U.S.C. § 102, under subsection (a)(1). Thus, the Court will refer to the new version of the statute from this point forward." (JA 428 at 2 n.1.) Because Creative repeatedly argues invalidity based on "public knowledge," a basis it never raised at the District Court and which does not appear in the current version of the statute, Appellees will reference the former version of the statute.

**STATEMENT OF FACTS**

## I. CREATIVE CHALLENGES THE '533 PATENT.

On October 20, 2004, Ron Kramer and Sal Abraham submitted an application for a United States Patent related to the use of diiodothyroacetic acid in dietary supplements. (JA 85 ¶ 5.) On April 5, 2011, the '533 Patent was duly and legally issued to inventors Sal Abraham and Ron Kramer. (*Id.* ¶ 6.) Claim 1 of the '533 Patent protects, "a method of promoting lean body mass in human individuals having a body mass index of at least 25, comprising directly administering to the individual an effective amount of diiodothyroacetic acid." (*Id.* ¶ 7.) And Claim 11 of the '533 Patent also claims, "A dietary supplement comprising diiodothyroacetic acid." (*Id.* ¶ 8.)

On September 22, 2011, Creative Compounds sent out a targeted email marketing DIAC for use in dietary supplements to eleven potential customers. (*Id.* ¶¶ 9, 11.) Creative has never denied that a sale pursuant to that email would infringe on the '533 Patent. Indeed, Creative's President Corey McNeely testified that DIAC "is something we definitely want to sell." (JA 86 ¶¶ 11, 13.)

To that end, on September 23, 2011 (the day after issuing its targeted email), Creative filed a complaint in the Eastern District of Missouri seeking a declaratory judgment that Creative did not infringe the '533 Patent and that the '533 Patent is invalid. (JA 50.) In response, ThermoLife filed a complaint in the District of

Arizona alleging that Creative infringed the '533 Patent, induced infringement of the '533 Patent, contributed to infringement of the '533 Patent, and falsely advertised its products in violation of 15 U.S.C. § 1125(a)(1)(B). (JA 25.) Those two actions were consolidated and assigned to the District of Arizona. (JA 11.)

## II. DURING DISCOVERY, CREATIVE PRODUCES NO EVIDENCE SUPPORTING ITS INVALIDITY CLAIMS.

During discovery, Appellees served interrogatories and requests for production. They also took the depositions of Creative's President Corey McNeely, its consultant Derek Cornelius, his wife Karla Cornelius, and Cornelius' former employees Brenda Nixon and Richard Nixon. At no point did Creative produce evidence meeting the clear and convincing standard. McNeely, the only witness directly employed at Creative, testified that he did not know of any facts to support the invalidity claim and that he had "delegated authority with respect to the company's handling of this litigation" to Cornelius. (JA 186.)

Cornelius testified that he obtained a sample of what he claims was DIAC in 2001 from Francisco Tabak, a supplier in Argentina. (JA 86 ¶ 15.) After he received the sample, Cornelius claims he engaged in experimentation. "[The] first thing [he] did was test it on [him]self . . . for . . . like, four to six weeks . . . ." (*Id.* ¶ 17.) During this time, Cornelius checked his pulse, blood pressure, and weight twice a day. (*Id.* ¶ 18.) He does not remember the dosage he used and did not keep a journal of the testing. (JA 87 ¶ 19.) He cannot remember the effect of the DIAC

on his blood pressure or weight loss—"I don't remember the exact, but it wasn't—I didn't lose ten pounds. I remember losing a few, so." (*Id.* ¶ 20.) Cornelius did not make any effort to determine if his weight loss was due to DIAC or other factors. (*Id.*)

After Cornelius tested the sample on himself, he "tested it on about four or five [other] people . . . ." (*Id.* ¶ 21.) In this second group, Cornelius again looked at "blood pressure, heart rate, just to make sure in other people it was okay and then ultimately, you know, make sure it was fat loss that they were getting." (*Id.*) Once again, Cornelius did not keep any journals of the tests on this second group. (*Id.*) At his deposition, Cornelius described his testing results as "anecdotal." (*Id.* ¶ 22.) He did not remember the results of the testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (*Id.*) He testified that he made no efforts to determine whether the weight loss was attributable to the DIAC or other factors—instead the results were "subjective." (*Id.* ¶ 23.)

Importantly, Creative did not produce any records of this so called testing. Cornelius did not keep journals of either set of tests. (*Id.* ¶¶ 19, 21.) He never published the results of his tests. (*Id.* ¶ 24.) He believes he may have discussed the tests on a message board but "[n]one of that information would've been kept. That website is -- no parts of that website are around anymore as far as I know." (*Id.*) He

never corresponded with an attorney regarding the possibility of obtaining a patent. (*Id.* ¶ 25.) And he never commissioned a study of DIAC. (*Id.* ¶ 26.)

Throughout discovery, Creative never produced one document proving that Cornelius worked with DIAC. It never produced one document proving that he had ever conducted experiments. No document ever showed that Cornelius had corresponded with anyone regarding his alleged experiments with DIAC. All of Creative's evidence comes from oral testimony and one email between Cornelius and Tabak that occurred before Cornelius even conducted his experiments.

## III. CREATIVE'S SHIFTING BASES FOR INVALIDITY.

A hallmark of this litigation has been Creative's refusal to commit to one theory. In its Declaratory Judgment Complaint, Creative listed every available basis for patent invalidity—even defenses it made no effort to support. (JA 53 ¶ 32.) In order to clarify Creative's claim, ThermoLife served an Interrogatory requesting that Creative "[i]dentify each and every factual and/or legal contention that supports your contention that the '533 Patent is invalid." (JA 88 ¶ 29.) Rather than provide a basis under all four statutes identified in the Declaratory Judgment Complaint, Creative's Response focused solely on 35 U.S.C. § 102(g)—its claim that Derek Cornelius is a prior inventor on the claims under the '533 Patent:

> Without waiving any of the foregoing objections, Derek Cornelius conceived of diiodothyroacetic acid ("DIAC") as a nutritional supplement, and further as nutritional supplement to promote lean body mass, in the fall of 2000. Mr. Cornelius thereafter communicated

with Francisco Tabak and Tolbiac SRL about the manufacture and supply of DIAC, with such discussions occurring in and through late fall and early winter of 2000-2001. By approximately the end of February 2001, Mr. Cornelius had received from Francisco Tabak an approximately 5 to 10 gram sample of DIAC. Among others, Mr. Cornelius took doses of DIAC orally as a dietary supplement to test its efficacy to promote lean body mass.

(*Id.*)

The clause "conceived of diiodothyroacetic acid ('DIAC') as a nutritional supplement" seems to indicate prior inventorship. Furthering this notion, at his deposition Cornelius relied solely on his claims that he had conceived of DIAC as a nutritional supplement before the '533 Patent issued to support Creative's claim for patent invalidity. But Creative later expressly disclaimed prior inventorship as a basis for invalidity. (JA 342.) And notably, Creative's answer does not mention prior use or sale as the basis for invalidity. (JA 88 ¶ 29.) Yet during summary judgment briefing, Creative sought to utilize its own misleading and vague disclosures to claim that it was relying on prior use and prior sale all along.

## IV. DISPOSITION BELOW.

At the close of discovery, each side submitted competing motions for summary judgment on the question of invalidity. (JA 68, 328.) Appellees also sought summary judgment on infringement. Notably, Creative defended Appellee's motion regarding infringement solely on the basis of invalidity. (JA 400.) The District Court even found it "worth noting that Creative appears to

concede that it made an offer to sell DIAC. (JA 431 n.2.) Whether a communication is an offer, however, is a question of law. Thus, Creative's concession is not binding on this Court." (*Id.*)

### A. The District Court Ruled Against Each Basis for Invalidity that Creative Raised Below.

In addressing Creative's invalidity argument, the District Court first examined Creative's "asser[tion] that the '533 Patent is invalid as anticipated under 35 U.S.C. § 102(a) through public use." (JA 434 at 8:23-24.) "[T]he Court f[ound] that, as a matter of law, Creative has failed to produce clear and convincing evidence of prior use." (JA 436 at 10:15-16.) The District Court based its ruling on the fact that Cornelius and Brenda Nixon were "interested witness for the purpose of the *Reuter* factors." (JA 435 - 436 at 9:27-10:1.) "Further, the events described by Mr. Cornelius and Ms. Nixon occurred in the year 2000, approximately 13 years before any possible trial date. Taken together, these two factors weigh heavily in favor of a finding that Creative has not provided the necessary clear and convincing evidence to prove invalidity." (JA 436 at 10:4-7.)

The only other evidence that Creative used to support its invalidity claim was an email between Tabak and Cornelius. The District Court determined that "the emails between Mr. Cornelius and Mr. Tabak do not corroborate any of Mr. Cornelius' or Ms. Nixon's testimony. No email ever mentions that Mr. Cornelius or Ms. Nixon used DIAC. The emails only contemplate the sale of DIAC. Thus,

the emails do not sufficiently corroborate Mr. Cornelius's and Ms. Nixon's testimony." (*Id*. at 10:8-11.)

The District Court also examined Creative's "assert[ion] that the '533 Patent is invalid as anticipated under 35 U.S.C. § 102(a)(1) because the invention was on sale before the patent was filed." (*Id*. at 10:19-20.) The District Court held that "as a matter of law, that the email [between Tabak and Cornelius] is not a commercial offer for sale. The email specifically requests that Mr. Cornelius provide Mr. Tabak with more information, and contemplates a discussion of terms 'when the moment comes.' Further, Mr. Tabak explains that any deal will require the approval of the 'future owner of 50% of the company.' Thus, the email specifically contemplates additional discussion and approval before any contract is made." (JA 438 at 12:3-8.) Therefore, as the District Court ruled that "the Tabak email is not an offer for sale and the '533 Patent is not invalid as anticipated." (*Id*. at 12:9-10.)

## B. The District Court's Ruling on Appellees' Infringement Claims.

Appellees have not appealed the District Court's ruling that their claims were not ripe. It is unclear why Creative addresses these rulings but to make the record clear, Appellees briefly address them. The District Court based its ripeness rulings on the fact that Creative's advertisement was not "an offer to sell under the meaning of 35 U.S.C. § 271(a)." (JA 431 at 5:10-11.) "Accordingly, the Court will dismiss ThermoLife's direct patent infringement claim without prejudice for

failing to meet the jurisdictional requirement of ripeness." (*Id.* at 5:22-24.) The District Court dismissed Appellees' contributory infringement claim on the same ground. (JA 431 - 432 at 5:25-6:2.) Finally, "[b]ecause ThermoLife has provided no evidence of 'another's direct infringement,' the Court grant[ed] summary judgment to Creative on Thermolife's induced infringement claim." (JA 434 at 8:4-6.) But as noted above, the District Court made its ripeness rulings based on its own jurisdictional examination. Creative conceded infringement. (JA 431 n.2.)

Creative does not have clear and convincing evidence of prior use. Instead, Creative relies solely on the oral testimony of its consultant and his former employee. "The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999); *see also Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737-38 (Fed. Cir. 2002) ("Generally, oral testimony of prior public use must be corroborated in order to invalidate a patent").

Creative cannot point to any other evidence in the record. Instead, Creative advances numerous specious arguments for why the evidentiary bar should be lowered. It argues it does not need to show reduction to practice because it has evidence (in the form of more oral testimony) of possession. It argues that mere possession of DIAC is sufficient to invalidate Claim 11 of the '533 Patent that protects: "A dietary supplement comprising diiodothyroacetic acid." (JA 85 ¶ 8.) It then argues that this is all sufficient because, without any support whatsoever, inherent features present in prior art may invalidate patents in other contexts. Creative ignores the fact that it has no prior art in this case.

Despite all of the arguments that Creative throws against the wall (some of them for the first time in this appeal), this case is rather simple. Creative has no

evidence of reduction to practice. It has no documentary evidence supporting its oral testimony. Its oral testimony is based on the 13 year old recollections of interested parties. The District Court was correct when it ruled that as a matter of law Creative lacked clear and convincing evidence to invalidate the '533 Patent. The Court should affirm the District Court's ruling.

## ARGUMENT

### I.    THE STANDARD OF REVIEW.

The Federal Circuit Court of Appeals "review[s] a District Court's grant of summary judgment *de novo*." *Creative Compounds*, *LLC v. Starmark Labs.*, 651 F.3d 1303, 1309 (Fed. Cir. 2011) (quoting *Ethicon Endo-Surgery*, *Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998)). "Summary judgment is appropriate when, based on the record, no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law." *Eli Lilly & Co. v. Barr Labs.*, *Inc.*, 251 F.3d 955, 962-63 (Fed. Cir. 2001) (citing Fed. R. Civ. P. 56(c)). "A genuine issue exists if the evidence is such that a reasonable jury could find for the nonmoving party." (*Id.*) (citing *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)). "A disputed fact is material if it might affect the outcome of the suit such that a finding of that fact is necessary and relevant to the proceeding." (*Id.*) The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Importantly, "[w]hen evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *Eli Lilly*, 251 F.3d at 962 (citing *Anderson*, 477 U.S. at 252-53, 106 S. Ct. 2505). "Under the patent statutes, a

patent enjoys a presumption of validity, *see* 35 U.S.C. § 282, which can be overcome only through clear and convincing evidence . . . ." (*Id*.); *see also Creative Compounds*, *LLC v. Starmark Labs.*, 651 F.3d 1303, 1309-10 (Fed. Cir. 2011). "Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise. Alternatively, a moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." (*Id*.)

## II.   CREATIVE'S INVALIDITY CLAIMS RELY ON UNDOCUMENTED AND UNCORROBORATED EVIDENCE.

"The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999); *see also Juicy Whip*, *Inc. v. Orange Bang*, *Inc.*, 292 F.3d 728, 737-38 (Fed. Cir. 2002) ("Generally, oral testimony of prior public use must be corroborated in order to invalidate a patent."). Yet that is exactly what Creative asks this Court to do. Creative only has three sources of evidence supporting its invalidity claim: 1) the oral testimony of its consultant Derek Cornelius; 2) the oral testimony of one

of Cornelius' former employees, Brenda Nixon; and 3) one e-mail in which Cornelius contemplated a future transaction to obtain DIAC.

Creative has no documents proving that either Cornelius or Nixon actually used DIAC. It has no documents proving that the compound Cornelius received was in fact DIAC. It has no documents in which either Cornelius or Nixon ever corresponded with anyone after they allegedly received and tested DIAC. Creative has no documents proving that anyone else in the industry tested DIAC, sold DIAC, or used DIAC prior to the issuance of the '533 Patent. When the District Court examined Creative's evidence (or lack thereof), it determined that Creative fell far short of clear and convincing evidence.[1] The District Court found that the oral testimony could not constitute sufficient evidence to invalidate a patent because the witnesses were interested and approximately 13 had passed from the time of the events. (JA 435 - 436 at 9:1-10:7.) The District Court also noted that "[n]o email ever mentions that Mr. Cornelius or Ms. Nixon used DIAC. . . . Thus, the emails do not sufficiently corroborate Mr. Cornelius's and Ms. Nixon's testimony." (JA 436 at 10:9-11.)

The District Court's ruling comports with long established law. "The Supreme Court recognized over one hundred years ago that testimony concerning

---

[1] Here, Appellees argue based on Creative's asserted claim for prior use. Below, the District Court also ruled that Creative did not have evidence to support its invalidity claim based on the on-sale bar. Creative does not appeal that ruling.

invalidating activities can be 'unsatisfactory' due to 'the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury.'" *Finnigan*, 180 F.3d at 1366 (quoting *The Barbed-Wire Patent*, 143 U.S. 275, 284 (1892)). Creative provides no reason to make an exception in this case.

Importantly, in explaining the rationale for this rule, the Federal Circuit held, "Mere testimony concerning invalidating activities is received with further skepticism because such activities are normally documented by tangible evidence such as devices, schematics, or other materials that typically accompany the inventive process." (*Id.* at 1366-67.) Three years later, this court expounded upon this rationale, "'The Supreme Court's view of human nature as well as human recollection, whether deemed cynical or realistic, retains its cogency. This view is reinforced, in modern times, by the ubiquitous paper trail of virtually all commercial activity. It is rare indeed that some physical record (*e.g.*, a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist.'" *Juicy Whip*, 292 F.3d at 742 (quoting *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1373 (Fed. Cir. 1998)).

Here, Creative utterly lacks this "ubiquitous paper trail of virtually all commercial activity." It has no records, notes, communications, or anything else

that one would expect to exist. The need for documented evidence is clear in Creative's Opening Brief. Creative repeatedly calls its evidence "undisputed" or "uncontradicted." But when Creative relies on the oral testimony of two people, without any paper trail, it is practically impossible to truly dispute. Creative is essentially arguing that the Court should simply take Cornelius' word for it. But as this Court stated in a previous case involving Creative and Cornelius: "Creative's only evidence on this issue was the uncorroborated deposition testimony of Cornelius himself. '[T]he case law is unequivocal that an inventor's testimony respecting the facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof.'" *Creative Compounds*, *LLC v. Starmark Labs.*, 651 F.3d 1303, 1313 (Fed. Cir. 2011) (quoting *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993). While that case involved a different basis for invalidity, the result should be the same: "Such evidence is insufficient as a matter of law to establish invalidity of the patent." (*Id.*) (quoting *Finnigan*, 180 F.3d at 1370).

Because Cornelius' testimony is insufficient to create an issue of fact, Creative tries to save its case by relying on the oral testimony of Cornelius' former employee, Brenda Nixon. But "[t]he uncorroborated oral testimony of [the accused infringer], as the inventor, and his close associates would be insufficient to prove invalidity." *Oney v. Ratliff*, 182 F.3d 893, 896 (Fed. Cir. 1999). Creative argues

that the Court should ignore this long held precept because Brenda Nixon did not get along with Cornelius. Creative misses the point. "In the final analysis, the Supreme Court has defined the necessity of corroboration not with reference to the level of interest of the testifying witness, but rather because of doubt that testimonial evidence alone in the special context of proving patent invalidity can meet the clear and convincing evidentiary standard to invalidate a patent." *Finnigan*, 180 F.3d at 1367-68 (Fed. Cir. 1999). "That the witnesses themselves were not interested did not immunize their testimony from the corroboration requirement." (*Id.*) Accordingly, case law has settled on a simple rule: "In the context of the public use or on-sale bar, verbal testimony by interested parties must be corroborated by documentary testimony; testimony of one witness cannot be used to corroborate that of another witness." *Lacks Indus.*, *Inc. v. McKechnie Vehicle Components USA*, *Inc.*, 322 F.3d 1335, 1349 (Fed. Cir. 2003).

Creative argues that "it is only the inventor's testimony that requires corroboration" and that Cornelius is not an inventor. (Opening Brief ("OB") (quoting *Price*, 988 F.2d at 1195). Creative then goes over factors listed in *Price* to show that Ms. Nixon's testimony can corroborate Cornelius' work. First, it is not just inventor's testimony that this Court views with skepticism. It is the use of the oral testimony, not the identity of the witness: "The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent

other evidence that corroborates that testimony." *Finnigan*, 180 F.3d at 1366. Second, the nature of Ms. Nixon's relationship with Cornelius is hardly the issue. The issue is that it is 13 year old recollections that support her former employer and that are wholly unsupported by any documents whatsoever. The result is that the testimony of both Cornelius and Ms. Nixon is uncorroborated and cannot be used to invalidate the '533 Patent.

## III.  MERE POSSESSION OF DIAC IS INSUFFICIENT TO INVALIDATE THE '533 PATENT.

As demonstrated above, Creative does not have sufficient evidence to meet its clear and convincing standard to invalidate the '533 Patent. Accordingly, without citing a single case, Creative invents a new test to invalidate a patent based on mere possession of the active component of the invention. (OB at 19 ("Syntrax knew about, and, indeed, had possession of an embodiment that met all the limitations of claim 11.").) As an initial note, Creative's only evidence that it possessed such an embodiment is the oral testimony of Derek Cornelius. Creative paints that evidence as undisputed but the issue is that there is simply no way to dispute Cornelius' oral testimony. There are no documents proving he ever had DIAC or did anything with it, much less discovered its novel use as a dietary supplement.

Beyond the evidentiary problem, Creative's new "possession test" cannot invalidate the '533 Patent. To arrive at its conclusion, Creative engages in

logistical gymnastics to edit the word "supplement" out of the term "dietary supplement" and wholly ignores the long established need for reduction to practice to invalidate a patent based on prior use. Creative's argument fails because, by its very definition, a dietary supplement must do something –it must supplement a diet. Accordingly, Cornelius would have had to reduce the invention to practice—a task he never undertook.

Left with no other support, for the first time Creative raises the issue of inherent anticipation in a prior art reference. Creative's alleged "prior art" is again based solely on Cornelius' testimony. There is no previous patent to reference as in Creative's cited case law. There are no documents to reference. And none of Creative's case law suggests that mere possession forms the basis for inherent anticipation or that inherent anticipation is relevant to a prior use claim. The inherent anticipation argument, like all of Creative's arguments, is simply another attempt to lower the burden of proof.

## A. Creative Has No Evidence of Reduction to Practice.

In the District Court, Creative advanced two bases for its invalidity claim: (1) prior use pursuant to the prior version of 35 U.S.C. § 102(a); and (2) the on-sale bar pursuant to the prior version of 35 U.S.C. § 102(b).[2] "[I]t is axiomatic that there can be no public use of an invention before it exists." 3 Pat. L. Fundamentals

---

[2] Again, Creative does not appeal summary judgment against its use of the on-sale bar.

§ 10:9 (2d ed.) Accordingly, "[i]n order for a use to qualify as prior art under 35 U.S.C.A. § 102(a) and (b), it must have been reduced to practice." (*Id*.) Even Creative concedes that it needed to show reduction to practice: "Here, Creative merely needs to demonstrate that, before Plaintiffs' invention thereof, Cornelius reduced to practice the claimed invention . . . ." (OB at 18.)

The requirement for reduction to practice alone invalidates Creative's "possession test." Notably, Creative offers no case law in support of the notion that possession can replace reduction to practice. Instead, this Court has been clear that "[a]n invention is reduced to practice when the patentee has an embodiment that meets every limitation and operates for its intended purpose. . . . An invention works for its intended purpose when there is a demonstration of the workability or utility of the claimed invention." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp*., 488 F.3d 982, 997 (Fed. Cir. 2007) (internal citations omitted). Put another way, "reduction to practice requires 'the discovery that an invention actually works.' . . . This suggests that until that 'discovery' is actually made, there is no reduction to practice." *Estee Lauder Inc. v. L'Oreal*, *S.A.*, 129 F.3d 588, 593 (Fed. Cir. 1997) (quoting *Burroughs Wellcome Co. v. Barr Lab.*, *Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).

Creative has no evidence—let alone clear and convincing evidence—of reduction to practice. Creative has no documents showing a reduction to practice or

even discussing DIAC. Cornelius did not keep a journal of any of his alleged use or testing and could not remember dosages. (JA 87 ¶¶ 19, 21.) He never published the results of his tests. (*Id.* ¶ 24.) He believes he may have discussed the tests on a message board but "[n]one of that information would've been kept. That website is—no parts of that website are around anymore as far as I know." (*Id.*) He never called an attorney regarding the possibility of obtaining a patent. (*Id.* ¶ 25.) He never commissioned a study of DIAC. (*Id.* ¶ 26.)

Even Cornelius' uncorroborated oral testimony falls short of demonstrating reduction to practice. At his deposition, Cornelius conceded that he made no efforts to determine if his weight loss was due to DIAC or other factors. (*Id.* ¶ 20.) Instead, he described his tests as "subjective" and the results "anecdotal." (*Id.* ¶¶ 22-26.) He admitted that he does not remember the results of the testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (*Id.*) He could not even remember the effect of the DIAC on his blood pressure or weight loss—"I don't remember the exact, but it wasn't—I didn't lose ten pounds. I remember losing a few, so." (*Id.* ¶ 20.) Furthermore, Cornelius did not make any effort to determine if his weight loss was due to DIAC or other factors. (*Id.*) Simply put, Creative has no evidence demonstrating reduction to practice.

## B.     A "Dietary Supplement" Must "Supplement" a "Diet."

Left without any evidence of reduction to practice, Creative argues that it can simply redefine the terms of the '533 Patent in order to lower its evidentiary bar. Creative claims that because of the way in which '533 Patent defines "dietary supplement," Creative does not have to show reduction to practice because Claim 11 requires no health benefits. In order to arrive at this conclusion, Creative must argue that the word "supplement" has no meaning. Creative's entire argument quickly collapses on the basis of this flawed premise.

Claim 11 reads: "A dietary supplement comprising [DIAC]." The dictionary defines a "dietary supplement" as "a product taken orally that contains one or more ingredients (as vitamins or amino acids) that are intended to supplement one's diet and are not considered food." MIRIAM-WEBSTER'S DICTIONARY (online version). "Supplement" is defined as "something that completes or makes an addition." (*Id.*) The medical definition is similar but includes terms from DSHEA: "a product other than tobacco that is taken by mouth, that contains one or more vitamins, minerals, herbs or other botanicals, amino acids, substances supplementing the diet by increasing the daily dietary intake, or a concentrate, constituent, metabolite, extract, or combination of these, that is not represented as a food or as constituting a meal or the sole item of the diet, and that contains as part of its labeling the words dietary supplement." (*Id.*)

Accordingly, in order for DIAC to supplement one's diet, it must "complete[] or make[] an addition" to the diet. It must "increase[e] the daily dietary intake [of something] that is not represented as a food . . . ." Whether DIAC supplements the diet can only be answered once the inventor has reduced the invention to practice. Cornelius concedes that he cannot remember the results of his testing other than that he "think[s] people lost a small amount of weight and felt pretty good on it." (JA 87 ¶ 22.) He described his own tests as "subjective" and the results "anecdotal." (*Id.* ¶¶ 22-26.) He cannot even remember the effect of the DIAC on his blood pressure or weight loss and made no efforts to determine if his weight loss was due to DIAC or other factors. (*Id.* at ¶ 20.) In other words, Cornelius never determined whether DIAC *supplemented* a diet at all.

In order to avoid this conclusion, Creative baldly asserts that it "most certainly does not need to show that Cornelius or anyone else had to know, or prove the existence, of any specific health benefit associated with DIAC." (OB at 18.) But Cornelius had to show that DIAC supplemented the diet which requires that it do something. The problem with Creative's argument is that it requires the Court to write the word "supplement" out of the term "dietary supplement." Creative focuses wholly on the compound (in this case DIAC) and declares the invented use (known only through reduction to practice) meaningless.

In order to arrive at this very narrow definition of the term, Creative contends that "Kramer acted as their own lexicographers by defining 'dietary supplement' when they stated: '[DIAC] is a direct naturally occurring metabolite of T3, Triac, and T2, which has never been investigated or sold as a new drug therefore it may be sold as a dietary supplement.' J.A. 4, col. 3, lines 28-31." (OB at 17.) The quoted sentence from the '533 Patent specification (or any other passage from the '533 Patent) hardly acts as a definition. It simply states a conclusion of law based on DSHEA—namely, because it has not been investigated or sold as a new drug therefore it may be sold as a dietary supplement. That conclusion does not define the term, nor could it. Indeed, every compound "which has never been investigated or sold as a new drug" is not automatically a "dietary supplement." Extending Creative's logic, sawdust would be a dietary supplement because it "has never been investigated or sold as a new drug."

Simply put, the '533 Patent does not "define" the term "dietary supplement." It references a law that defines "dietary supplement" in such a way that Creative could never satisfy it with mere possession of a compound. Accordingly, Creative's argument fails because it is based on a faulty premise. The argument is even stranger considering that Creative concedes that "words of a claim are generally given their ordinary and customary meaning; to wit, the meaning that the term would have to a person of ordinary skill in the art in question at the time of

the invention." (OB at 14 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005).) Creative also concedes that "[p]ersons of ordinary skill in the art are deemed to read claim terms not only in the context of the particular claim in which it appears, 'but in the context of the entire patent, including the specification.'" (OB at 16 (quoting *Phillips*, 415 F.3d at 1313)).

Yet Creative then reverses course and declares that "although the specification speaks almost entirely of using DIAC to promote lean muscle tissue or increasing the proportion of lean muscle mass to adipose tissue, the Court cannot import those limitations into Claim 11." (OB at 18.) But a person of ordinary skill in the art will read claim 11 in "the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. The entire patent, including the specification, makes it clear how DIAC supplements the diet. Accordingly, mere possession of DIAC, without reduction to practice as a functioning dietary supplement, cannot invalidate the '533 Patent.

## C. Inherent Anticipation Does Not Provide a Basis for Creative's "Possession Test."

As an initial matter, Creative never argued for inherent anticipation in the District Court. This specious argument was waived and the Court may ignore it completely.

But this particular argument is so flawed it would not have mattered if Creative did raise it below. Without any cited support, Creative argues that "when

S[y]ntrax received the DIAC from Mr. Tabak, one of its inherent features was that it could be sold as a dietary supplement." (OB at 19.) Other than Cornelius' oral testimony, Creative has no evidence that the compound Cornelius received was actually DIAC. More importantly, Creative certainly has no evidence that "one of [DIAC's] inherent features was that it could be sold as a dietary supplement." Creative did not retain an expert to evaluate that statement. In fact, even Cornelius never testified to that point. It is a bald assertion of counsel to make an argument.

More fundamentally, Creative does not apply the doctrine of inherent anticipation correctly. Creative discusses the inherent features of DIAC itself. The cases it cites discuss inherent anticipation by prior art references. Creative has no prior art. It has Cornelius' description of DIAC but it has no documents that can be examined as prior art. Indeed, in *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, this Court examined prior use and anticipation by prior art separately. If Creative was correct that possession could invalidate a patent due to inherent characteristics, prior use would be meaningless. **If there was a prior use there would have to be possession.** This is not the law. Every case dealing with prior use would have to examine whether the possessed invention had inherent unrecognized qualities. That case law does not exist. It does not exist because Creative is simply borrowing concepts from various areas of law to make a losing argument.

## IV. CREATIVE CANNOT RELY ON "PUBLIC KNOWLEDGE."

At summary judgment, Creative sought to invalidate the '533 Patent based on two grounds: 1) prior public use and 2) the on-sale bar. (JA 328.) In response to previous discovery requests served prior to summary judgment, Creative had relied on Cornelius' "conception" of the invention, a concept wholly unrelated to either public use or the on-sale bar. Yet Creative later disclaimed reliance on prior inventorship. (JA 342.) Throughout the litigation, every time Creative recognizes its current tact leads nowhere, it has relied on a new argument. That trend continues in the Opening Brief. For the first time, Creative now argues that public knowledge forms the basis for invalidation. But Creative waived this argument by failing to raise it in front of the District Court. Even if it did not waive the argument, Creative has no evidence supporting invalidation through public knowledge.

### A. Creative Waived its Public Knowledge Argument.

Case law makes it clear that the various types of claims of invalidity are distinct. *See Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002) ("at most four types of invalidity based on § 102 are asserted in this case: (1) § 102(a) invalidity because the invention was 'known' by others in this country before the invention by the applicant for patent, (2) § 102(a) invalidity because the invention was 'used' by others in this country before the invention by

the applicant for patent, (3) § 102(b) invalidity because the invention was 'in public use" in this country more than one year prior to the date of the application for patent in the United States, and (4) § 102(b) invalidity because the invention was 'on sale' in this country more than one year prior to the date of the application for patent in the United States"); *see also Pac-Tec*, *Inc. v. Amerace Corp.*, 903 F.2d 796, 801-02 (Fed. Cir. 1990) ("In the face of this court's repeated condemnation of the practice of raising issues for the first time on appeal, and after a trial limited to its defenses under § 102(a) and (b), Pac-Tec blatantly argues a defense under § 102(g)").

This Court has been clear that appellants "cannot simply choose to make its arguments in iterative fashion, raising a new one on appeal after losing on its other at the District Court. This is an appellate court and as such we abide by the general rule that new arguments will not be decided in the first instance on appeal." *Golden Bridge Tech.*, *Inc. v. Nokia*, *Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008). That is exactly what Creative attempts to do in its Opening Brief. Unable to demonstrate public use or prevail on the on-sale bar, Creative has opted to work its way through the statute. It never raised any argument based on public knowledge during summary judgment briefing. The Court should not permit Creative to test its latest theory for the first time on appeal.

**B.      Even if Not Waived, the Public Knowledge Argument is Insufficient.**

Admittedly, it is difficult to determine if Creative is making a new argument or again combining distinct concepts into its previous "public use" argument. For example, on Page 20 Creative states, "The undisputed evidence clearly and convincingly proves that Syntrax received and knew about DIAC no later than early 2001, and that use of it as a dietary supplement was an inherent characteristic of DIAC." Just in this one sentence, Creative states that it "knew" about DIAC, yet "use as a dietary supplement was an inherent characteristic." The first clause is definitely a "public knowledge" argument, while the second is, as discussed above, a combination of "public use" and "prior art anticipation."

Regardless of how it casts its argument, Creative still faces an overwhelming evidentiary problem. Here, all of the evidence comes from Derek Cornelius or those acting in concert with him. Creative has no evidence suggesting that the use of DIAC as a dietary supplement was known by the public (or as argued above, even by Cornelius himself). To overcome this problem, Creative casts Cornelius and his employees as a kind of all-in-one, self-authenticating "public." Creative insists that it is sufficient for Cornelius to both know about DIAC ***and*** be the public to which that knowledge is accessible.

The implications of Creative's argument are staggering. If Creative is correct then anyone can claim that they knew about an invention prior to patenting and,

without further corroboration, invalidate that patent because the person with the knowledge is also a member of the public. Not surprisingly, this Court recently reiterated that Creative's argument holds no merit. "[E]ven in the case of third-party uses, being 'accessible to the public' still requires public availability; secret or confidential third-party uses do not invalidate later-filed patents." *Dey*, *L.P. v. Sunovion Pharm.*, *Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013). This language alone invalidates Creative's argument that Cornelius, a third party, can both possess the knowledge and form the basis for the "public" component.

In that case, the Court specifically cited the very language on which Creative relies: "[p]ublic use includes any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy *to the inventor.*" *Id.* at 1358 (emphasis in original) (internal quotations omitted). Undermining the basis for Creative's entire argument, the Court held, "As is clear from the context, however, those statements are not meant to apply to third-party use cases. If they did, any unaffiliated third-party use, no matter how secret, would necessarily invalidate a patent because such uses are, by definition, made by persons not owing a duty of secrecy 'to the inventor.' Our third-party use precedent is not so limited." *Id.*

"Because a secret third-party use is not invalidating, [the court's] task is to assess whether the third party's use was sufficiently 'public' to impose the section

102 bar." *Id.* at 1358-59. Here, Creative offers no evidence that its use or knowledge was public. It relies solely on the testimony of Cornelius and his employee. Creative stresses that Ms. Nixon was not covered by a confidentiality provision, but like *Dey*, "That [the] trial subjects owed no duty of confidentiality . . . is, of course, true, but it does not bear on that question." *Id.* The issue is the accessibility of the use or the knowledge. Creative has no evidence of either.

Even Creative's own case law holds, "Although in some circumstances unsupported oral testimony can be sufficient to prove prior knowledge or use, it must be regarded with suspicion and subjected to close scrutiny." *Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 138 (Fed. Cir. 1986) *amended on reh'g sub nom.* 86-728, 1986 WL 1154370 (Fed. Cir. Dec. 16, 1986) (cited in the OB at 20). Commentators agree, stating, "[t]he isolated knowledge of a single inventor or enterprise is therefore not enough to anticipate; instead, the knowledge must be at least so widely held that it is irretrievably in the process of becoming the 'stock in trade of the particular industry.'" 2 MOY'S WALKER ON PATENTS § 8:167 (West 4th ed.). "The exact number of persons whose knowledge will satisfy this criterion will vary according to each case. Nevertheless, it is fairly clear that the number is quite small; typically knowledge by fewer than a dozen persons will

suffice if they are not bound by confidentiality *or otherwise acting in concert*." *Id.* (emphasis added).

## V. CREATIVE DOES NOT ADDRESS THE STANDARD REQUIRED TO PROVE PRIOR SALE UNDER § 102(b).

In the District Court, Creative made the on-sale bar under § 102(b) one of the cornerstones of its case. Creative does not mention the on-sale bar anywhere in its Opening Brief but Creative has constantly shifted its arguments. It is out of an abundance of caution that appellees insist that the on-sale bar does not apply. The Supreme Court held that "the on-sale bar applies when two conditions are satisfied before the critical date. First, the product must be the subject of a commercial offer for sale. . . . Second, the invention must be ready for patenting. That condition may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67-68 (1998).

Based on the evidence, Creative cannot meet this standard. It has no evidence demonstrating that the invention was ready for patenting and, as the District Court held, no evidence of an offer for sale.

## VI. CONCLUSION.

In the District Court, Creative sought invalidation of the '533 Patent based on prior sale and prior use. It did not appeal summary judgment on prior sale and asks this Court to accept only scant oral testimony in support of prior use. Creative's arguments for invalidation are unprecedented. Creative seeks invalidation based on Cornelius' oral testimony regarding possession. It offers no evidence of reduction to practice. It offers no evidence of public use. It offers no documents corroborating it's oral testimony. Instead, it presents specious arguments regarding the definition of the term "dietary supplement" and misapplications of law from other contexts.

The Court should affirm the District Court's granting of summary judgment and award Appellees their fees in response to this baseless appeal.

Respectfully submitted this 22nd day of May, 2014.

KERCSMAR & FELTUS PLLC

/s/ Gregory B. Collins
Geoffrey S. Kercsmar
Gregory B. Collins
KERCSMAR & FELTUS, PLLC
7150 E. Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001 Telephone
(480) 421-1002 Facsimile
gbc@kflawaz.com
Attorneys for Plaintiffs/Counter-Defendants/Appellees

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 22nd day of May, 2014, I caused this Brief of Plaintiffs/Counter-Defendants/Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Thomas J. DeGroot
LAW OFFICES OF THOMAS DEGROOT, LLC
32 South Elm Avenue
St. Louis, Missouri 63119
(314) 824-8032

*Counsel for Appellants*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Plaintiffs/Counter-Defendants/Appellees will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Gregory B. Collins
*Counsel for Appellees*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*8,281*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>May 22, 2014</u>          <u>/s/ Gregory B. Collins</u>
                                   *Counsel for Appellees*